**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

MAR 29 2013

J T NOBLIN CLERK
BY_____DTY

**ZO SKIN HEALTH, INC.**

**PLAINTIFF**

**V.**                              CIVIL ACTION NO. _4:13CV56 HTW-LRA_

**CONNECTIONS UNLIMITED, LLC AND**
**JOSEPH SCOTT**                              **DEFENDANTS**

## COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiff, ZO Skin Health, Inc. ("ZO Skin Health"), respectfully states the following for its Complaint against defendants Connections Unlimited, LLC ("Collections Unlimited") and Joseph Scott ("Mr. Scott") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125, and tortious interference with contract.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff ZO Skin Health is a corporation, organized under the existing laws of the State of California, with its principal place of business located at 1 Technology Drive, Suite B-123, Irvine, California 92618.

2.      Upon information and belief, defendant Connections Unlimited is a Mississippi limited liability company with its principal place of business located in Meridian, Mississippi and may be served through its registered agent for service of process, Joseph Scott, 2440 North Hills Street, Suite 105, Meridian, Mississippi 39305.

3.      Upon information and belief, defendant Mr. Scott is a natural person conducting business at 2440 North Hills Street, Meridian, Mississippi and is a principal of Connections Unlimited.

4.     Upon information and belief, Defendants, working together based in Meridian, Mississippi, do business and sell a variety of products on the Internet via several different websites including, but not limited to, www.eBay.com.

5.     The Court has federal question jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and laws of the United States; the provisions of 28 U.S.C. § 1338 because this is a civil action arising under an Act of Congress relating to trademarks; and the provisions of 15 U.S.C. § 1125.

6.     The Court has supplemental jurisdiction over the state-law claims of ZO Skin Health pursuant to the provisions of 28 U.S.C. § 1367.

7.     Venue is proper in this District and this Division under, without limitation, 28 U.S.C. §§ 1391(b)(2) & (3) because a substantial part of the events or omissions giving rise to the claims occurred in this District and this Division and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### *ZO Skin Health & Its Trademarks*

8.     ZO Skin Health develops and sells high-end skin care products by utilizing cutting-edge science and the extensive clinical experience of its medical director, Dr. Zein Obagi.

9.     ZO Skin Health devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name and reputation.  Each product is packaged in a manner in which the ZO Skin Health brand is easily and readily identifiable. Furthermore, each product is handled with the utmost care and precision during the packaging and transport process.

10.   In the highly competitive skin care market, quality is a fundamental part of the consumer's decision to purchase a product.

11.   ZO Skin Health has registered several trademarks with the United States Patent and Trademark Office with respect to its brand and products, including "ZO"®, registration no. 3443712; "Offects"®, registration no. 3818858; "Ossential"®, registration no. 3593734; "Ommerse"®, registration no. 3544801; "Oclipse"®, registration no. 3774720; "Olluminate"®, registration no. 3534953; and "Oraser"®,  registration no. 3534951 (collectively, the "ZO Registered Trademarks").

12.   The registration for each of the ZO Registered Trademarks is valid, subsisting and in full force and effect.  Further, pursuant to 15 U.S.C. § 1065, the ZO Registered Trademarks serve as conclusive evidence of  ZO Skin Health's ownership of the marks and of its exclusive rights to use the marks in commerce and in connection with the sale and distribution of ZO Skin Health's products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

13.   ZO Skin Health also has several other trademarks that it regularly uses in commerce.  ZO Skin Health has trademark applications pending with the United States Patent and Trademark Office for each of these trademarks, including "Balatone," application no. 85505883; "Brightenex," application no. 85505893; "Cebatrol," application no. 85505978; "Glycogent," application no. 85505981; "Melamin," application no. 85505963; "Melamix," application no. 85505965; "Normacleanse," application no. 85505878; "Oilacleanse," application no. 85505870; "Retamax," application no. 85505957; and "ZO Medical," application no. 85518544 (the "ZO Application Trademarks").

14.     The ZO Registered Trademarks and the ZO Application Trademarks are hereinafter collectively referred to as the "ZO Trademarks."  ZO Skin Health actively uses and markets all of the ZO Trademarks in commerce.

15.     A true and accurate copy of the registrations and applications for each of the ZO Trademarks is attached hereto as Exhibit A and incorporated herein by reference.

16.     Due to the quality and exclusive distribution of ZO Skin Health's products, and because ZO Skin Health is uniquely recognized as the source of high quality products, the ZO Trademarks have enormous value.

### ZO Skin Health Production, Distribution, and Quality Control

17.     Due to the professional grade of its products, ZO Skin Health exercises strict quality control over the production and distribution of its skin care products.  Each product contains a universal product code ("UPC"), batch code and date affixed to the packaging or container of the product.  The UPC system facilitates the spotting of counterfeit units based on the absence of a UPC on the packaging or the use of a fake UPC number.

18.     ZO Skin Health also limits the sale of its products to authorized distributors, physicians, high-end spas, and a small-set of other entities authorized to sell ZO Skin Health products.

19.     Indeed, ZO Skin Health strictly regulates the domestic distribution of its products to certified dermatologists, plastic surgeons and cosmetic surgeons.  During the application process, domestic sellers are provided documents which make clear that ZO Skin Health "prohibits the resale of its products on the Internet."

20.     Similarly, ZO Skin Health utilizes a select group of international distributors authorized to sell ZO Skin Health products in defined markets.  International distributors are

4

required to execute an International Distribution Agreement in order to become an authorized international distributor of ZO Skin Health products. These agreements specify, among other things, that the distribution is limited to physicians' offices, medical spas and resort spas and excludes all other channels of distribution including mass merchants, warehouse clubs, traditional food and drug stores, websites and Internet retailers.

21.    ZO Skin Health also has a line of products named "ZO Medical" that are supposed to be sold under medical supervision and instruction. Medical supervision and instruction regarding the use of these products is fundamental to the quality of these products. For instance, within this line of products, ZO Skin Health has two prescription products – Melamin and Melamix – that contain hydroquinone. Hydroquinone is a potent chemical that typically requires a prescription.

22.    Because Melamin and Melamix contain hydroquinone, the quality of these products depends on the dosage amount for these products being properly prescribed and conveyed by a licensed physician. The quality of Melamin and Melamix also depends on licensed physicians evaluating whether the patient has any allergies that could affect the impact of these products, whether the patient is of sufficient age to use these products, and whether the use of the product is safe and appropriate for the patient. Because all of these factors are important to the quality of the products being offered by ZO Skin Health, ZO Skin Health goes to great effort to ensure that these products are only sold to patients by licensed physicians who are trained to appropriately prescribe and monitor the use of these products. Any interference with these processes materially alters the quality of the products, and thus, not only infringes upon ZO Skin Health's trademarks, but puts the consumers at great risk.

23.     For these reasons and to protect its end users, ZO Skin Health has strictly imposed its established quality control procedures of only selling its prescription products to persons that are licensed to sell those products and to consumers with prescriptions.

24.     Consequently, ZO Skin Health prohibits the sale of its products on the Internet because Internet retailers are largely unlicensed and there is no way to verify a consumer's prescription.

### *Defendants' Illegal Sale of ZO Skin Health Prescription Products*

25.     Defendants have sold and, upon information and belief, continue to sell ZO Skin Health prescription products, such as Melamix, for which a prescription is required prior to purchase on the website www.eBay.com.

26.     In fact, on or about March 8, 2013, ZO Skin Health's Vice President of Domestic and International Marketing, Deborah Tomes, purchased a ZO Medical product, Melamix, from Defendants on the website www.eBay.com.   A true and accurate copy of the purchase confirmation email, electronically signed by Mr. Scott, is attached hereto as Exhibit B.

27.     Further, when ZO Skin Health received the purchased prescription product Melamix from Defendants, the return address on the package was Collections Unlimited, LLC, 2440 North Hills Street, #105, Meridian, Mississippi.

28.     Upon information and belief, neither Mr. Scott nor Collections Unlimited have a license to sell prescription products.

29.     Defendants exacerbated their illegal sale of ZO Skin Health prescription products by not only selling the products without a license, but selling these same prescription products to Ms. Tomes, who did not have a prescription to purchase Melamix.

6

30.     Defendants' actions completely stripped ZO Skin Health of its established quality control procedures of only selling its prescription products to persons that are licensed to sell those products and to consumers with prescriptions.

31.     As a result, ZO Skin Health lost the ability to ensure its prescription products were provided to the appropriate persons, in the intended quantities, and under the appropriate conditions and to take measures to control the quality and integrity of its products and protect its consumers.

32.     ZO Skin Health has been completely divested of its established quality control procedures.  Defendants' illegal conduct also placed the consuming public at risk.

33.     ZO Skin Health has suffered significant monetary damages from Defendants' actions including, but not limited to, loss of sales for ZO Skin Health products, trademark infringement, and damage to its existing and potential business relations.

34.     ZO Skin Health has suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Trademarks, and its business relationships with legitimate distributors.  As a result of Defendants' unauthorized sale of products, ZO Skin Health's legitimate distributors are more likely to terminate their agreements to sell ZO Skin Health's products.

35.     ZO Skin Health further has suffered, and will continue to suffer, irreparable harm to its quality control procedures, the ZO Trademarks, and its goodwill based upon Defendants' sale of ZO Skin Health products that require a prescription prior to purchase.  The unauthorized sale of these prescription products significantly damaged ZO Skin Health's goodwill, diluted ZO Skin Health's brand, and potentially caused harm to the public.

36.   Defendants' conduct was knowing, intentional, willful, malicious and wanton contrary to law.

37.   ZO Skin Health is entitled to injunctive relief because Defendants will continue to sell illegitimately obtained prescription products, cause irreparable harm to ZO Skin Health's goodwill, and cause ZO Skin Health and its distributors to lose business.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15  U.S.C. § 1125

38.   ZO Skin Health re-alleges the allegations set forth in paragraphs 1-37 above, and incorporates each allegation herein by reference.

39.   The ZO Trademarks are valid and subsisting trademarks in full force and effect.

40.   Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale of ZO Skin Health prescription products.

41.   The use of the ZO Trademarks in connection with sale of ZO Skin Health prescription products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health prescription products.

42.   The products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health prescription products.   The products sold by Defendants were materially different because, among other reasons, Defendants sold ZO Skin Health prescription products without a license to customers that did not have prescriptions to purchase those products.

43.   Defendants' unauthorized sale of prescription products bearing the ZO Trademarks infringed on the ZO Trademarks.

8

44.     Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

45.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

46.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

**SECOND CAUSE OF ACTION**
**False Advertising**
**15 U.S.C. § 1125(a)**

47.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-46 above, and incorporates each allegation herein by reference.

48.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

49.     Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale and advertising of products without the consent of ZO Skin Health.

50.     The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive because it suggested that the products offered for sale by Defendants were genuine and authentic ZO Skin Health products, and originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

51.     Defendants' unauthorized sale of products bearing the ZO Trademarks, and unauthorized use of the ZO Trademarks in advertising infringed on the ZO Trademarks.

52.     Defendants' unauthorized use of the ZO Trademarks infringed on the ZO Trademarks.

53.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales for products, trademark infringement, and damage to its existing and potential business relations.

54.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

### THIRD CAUSE OF ACTION
#### Unfair Competition
#### 15 U.S.C. § 1125(a)

55.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-54 above, and incorporates each allegation herein by reference.

56.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

57.     Defendants willfully and knowingly used the ZO Trademarks in commerce with the sale and advertising of products without the consent of ZO Skin Health.

58.     The use of the ZO Trademarks in connection with the unauthorized sale and advertising of products by Defendants was likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of ZO Skin Health products because it suggested that the products offered for sale by Defendants originated from, or were sponsored, authorized, or otherwise connected with ZO Skin Health.

59.     Defendants' unauthorized sale of products bearing the ZO Trademarks, and unauthorized use of ZO Trademarks in advertising materially damaged the value of the ZO Trademarks and caused significant damages to ZO Skin Health's business relations.

60.     Defendants' unauthorized sale of products bearing the ZO Trademarks and unauthorized use of the ZO Trademarks in advertising infringed on the ZO Trademarks.

61.     As a result, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

62.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

### FOURTH CAUSE OF ACTION
**Trademark Dilution**
**15 U.S.C. § 1125(c)**

63.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-62 above, and incorporates each allegation herein by reference.

64.     The ZO Trademarks are valid and subsisting trademarks in full force and effect.

65.     ZO Skin Health is the owner of the ZO Trademarks, which are distinctive and widely recognized marks by the consuming public.  ZO Skin Health products are sold and purchased at major retail outlets domestically and internationally as well as prescribed and recommended by physicians in the skin care industry.

66.     ZO Skin Health is widely recognized as the designated source of goods bearing the ZO Trademarks.

67.     Defendants' willful use of the ZO Trademarks in connection with the unauthorized and illegal sale of their products diluted the ZO Trademarks because the products sold by Defendants were not, in fact, genuine and authentic ZO Skin Health products.

68.     As a result of Defendants' unlawful actions, the reputation of the ZO Trademarks was harmed and ZO Skin Health suffered immediate and irreparable injury.

69.     Further, ZO Skin Health has suffered damages including, but not limited to, loss of sales, trademark infringement, and damage to its existing and potential business relations.

70.     Pursuant to 15 U.S.C. § 1117(a), ZO Skin Health is entitled to an award of attorneys' fees.

## FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement Against Defendants

71.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-70 above, and incorporates each allegation herein by reference.

72.     Defendants' conduct as described above constitutes trademark infringement in violation of the common law of the State of Mississippi.

73.     Defendants' conduct as described is in direct violation and contravention of the Mississippi Trademark Act, Mississippi Code Sec. 75-25-25.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Business Relationships

74.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-73 above, and incorporates each allegation herein by reference.

75.     ZO Skin Health has current and potential business relations with distributors, physicians, and other entities relating to the sale, marketing and distribution of ZO Skin Health products.

76.     The current or potential business relationships that ZO Skin Health maintains with third-parties involving the sale, marketing and distribution of ZO Skin Health products are extremely valuable to ZO Skin Health's business.

77.     Upon information and belief, Defendants had knowledge of the business relations with third-parties.

78.     Defendants' willful, intentional and unlawful use of the ZO Trademarks interfered with ZO Skin Health's existing and potential business relations including, but not limited to, the

12

value of ZO Skin Health's contracts and agreements with authorized distributors as well as potential business relationships with other distributors that have been negatively influenced by the unauthorized sale of ZO Skin Health's product by Defendants.

79.     Defendants' willful, intentional and unlawful use of the ZO Trademarks was calculated to cause damage to ZO Skin Health in its lawful business.

80.     Defendants' willful, intentional and unlawful use of the ZO Trademarks was done with the unlawful purpose of causing damage or loss, without justifiable cause.

81.     ZO Skin Health has been damaged by Defendants' interference with its existing and prospective business relationships and is entitled to recover damages and reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with Contract

82.     ZO Skin Health re-alleges the allegations set forth in paragraphs 1-81 above, and incorporates each allegation herein by reference.

83.     ZO Skin Health has contracts with authorized distributors, physicians, and other entities relating to the sale, marketing and distribution of ZO Skin Health products.

84.     The current contracts  that ZO Skin Health maintains with third-parties involving the sale, marketing and distribution of ZO Skin Health products are extremely valuable to ZO Skin Health's business.

85.     Upon information and belief, Defendants had knowledge of ZO Skin Health's contracts with third-parties.

86.     An enforceable obligation existed under these contracts and would have been performed but for Defendants' willful, intentional and unlawful use of the ZO Trademarks.

87.     Defendants interfered with ZO Skin Health's existing contracts including, but not limited to, the value of ZO Skin Health's contracts and agreements with authorized distributors that have been negatively influenced by the unauthorized sale of ZO Skin Health's product by Defendants.

88.     Defendants' willful, intentional and unlawful use of the ZO Trademarks was calculated to cause damage to ZO Skin Health in its lawful business.

89.     Defendants' willful, intentional and unlawful use of the ZO Trademarks was done with the unlawful purpose of causing damage or loss, without justifiable cause.

90.     ZO Skin Health has been damaged by Defendants' interference with its contracts and is entitled to recover damages and reasonable attorneys' fees and costs.

## JURY DEMAND

Plaintiff ZO Skin Health demands trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, ZO Skin Health prays for relief and judgment as follows:

A.     Judgment in favor of ZO Skin Health and against Defendants, in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.     Preliminary and permanent injunctions that issue enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, any and all ZO Skin Health products as well as any products bearing any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, and ZO Medical,

ii)      Prohibiting the Enjoined Parties from using any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, and ZO Medical in any manner, including advertising on the Internet,

iii)      Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all ZO Skin Health products as well as any products bearing any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, and ZO Medical,

iv)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ZO Skin Health's products, or any of the ZO Trademarks including, but not limited to, ZO, Offects, Ossential, Ommerse, Oclipse, Olluminate, Oraser, Balatone, Brightenex, Cebatrol, Glycogent, Melamin, Melamix, Normacleanse, Oilacleanse, Retamax, and ZO Medical,

v)      Requiring the Enjoined Parties to take all action, including but not limited to requesting removal from Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the ZO Trademarks which associate ZO Skin Health's products or the ZO Trademarks with the Enjoined Parties or the Enjoined Parties' website,

vi)      Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ZO Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks, and

C.      An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

This the 27th day of March, 2013.

                          Respectfully submitted,

                          ZO SKIN HEALTH, INC.

                          BY: HUBBARD, MITCHELL, WILLIAMS & STRAIN, PLLC

                          BY: _____
                                STACEY L. STRAIN (MBN 101564)
                                JEFFREY P. HUBBARD (MBN 2830)


OF COUNSEL:
JEFFREY P. HUBBARD (MBN 2830)
hubbard@hubbardmitchell.com
STACEY L. STRAIN (MBN 101564)
strain@hubbardmitchell.com
HUBBARD, MITCHELL, WILLIAMS & STRAIN, PLLC
1062 Highland Colony Parkway, Suite 222
Ridgeland, Mississippi  39157
Post Office Box 13309
Jackson, Mississippi 39236
Telephone: (601) 707-3440
Facsimile:  (601) 898-2726

*Attorneys for ZO Skin Health, Inc.*

16